United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE ALVARA,<br><br>            Plaintiff,<br><br>    v.<br><br>AURORA LOAN SERVICES, INC. (a Delaware Corporation); HOMEFIELD FINANCIAL, INC. (a California Corporation); QUALITY LOAN SERVICES CORPORATION (a California Corporation), and DOES 1 through 50, inclusive,<br><br>            Defendants. | No. C-09-1512 SC<br><br>ORDER GRANTING DEFENDANT'S MOTION TO <u>DISMISS</u> |

## I.   **INTRODUCTION**

Plaintiff George Alvara ("Plaintiff") brought this suit in San Mateo Superior Court, alleging various improprieties surrounding the foreclosure of property that was used as security for a loan. <u>See</u> Notice of Removal, Docket No. 1, Ex. 1 ("Compl."). The case was removed to this Court because of federal questions raised in Plaintiff's Complaint. <u>See</u> Notice of Removal. Defendant Aurora Loan Services LLC ("Aurora" or "Defendant") has brought a motion to dismiss ("Motion"). Docket No. 5. Plaintiff filed an Opposition.[1] Docket No. 7. Aurora filed a Reply.

---

[1] Plaintiff's Opposition was submitted nearly two weeks late in violation of Civil Local Rule 7-3(a). The Court has considered the arguments made in the Opposition, but warns counsel for

1  Docket No. 8.  The other defendants, Homefield Financial, Inc.
2  ("Homefield"), Mortgage Electronic Registration Systems, Inc.
3  ("MERS"), and Quality Loan Services ("Quality") did not
4  participate in the Motion, and have made no appearance in these
5  proceedings.[2]

6  After submitting their briefs on the motions, Plaintiff and
7  Aurora stipulated to waive oral argument.  Docket No. 9.  Having
8  considered the briefing, the Court GRANTS Aurora's motion to
9  dismiss for the reasons stated below, but DENIES Aurora's request
10 to expunge the lis pendens on the subject property.

## II. BACKGROUND

On October 6, 2006, Plaintiff received a mortgage loan secured by property located at 193 1st Avenue, Daly City, in San Mateo County, California ("the house").  Compl. ¶¶ 7-8, 11. Plaintiff executed a Promissory Note and Deed of Trust in connection with his purchase of the house.  Id. ¶ 10.  Homefield was the lender, and MERS was the beneficiary of the Deed of Trust. Id. ¶ 2(c); Ex. B ("Deed of Trust") at 1.  Aurora is alleged to be the successor in interest of Homefield.  Compl. ¶ 2(a).  Quality later became both the beneficiary and trustee under the Deed of Trust.  See Aurora Request for Judicial Notice

---

Plaintiff that any future violations of the Local Rules may result in sanctions, as noted in Civil Local Rule 1-4.

[2] MERS was not mentioned in the caption of the Complaint, nor was it specifically mentioned in any of the causes of action. Nevertheless, Plaintiff apparently intended to include MERS as a defendant.  See Compl. ¶ 2(c).  The record before the Court indicates that MERS has not been served.  See Notice of Removal, Docket No. 1, Ex. 2 ("Summons") at 3.

2

1  ("RJN") Ex. 1 ("Substitution of Trustee") at 1.[3]

2  On September 4, 2008, Quality recorded a Notice of Default
3  and Election to Sell ("Notice of Default"), which stated that
4  Plaintiff was behind in his payments in the amount of $18,512.28.
5  See Compl. Ex. C.  On January 27, 2009, Aurora purchased the house
6  from Quality in a foreclosure auction.  See RJN Ex. 2 ("Trustee's
7  Deed").

8  On January 23, 2009, Plaintiff filed this action in San Mateo
9  Superior Court.  See Compl.  Plaintiff's Complaint alleges a
10 number of violations of state and federal law that stem from the
11 loan origination process as well as in the notice process leading
12 up to foreclosure, and Plaintiff claims that these violations
13 provide a basis for voiding the foreclosure sale.  Compl. at 12.
14 Aurora removed the action to this Court, See Notice of Removal,
15 and has moved to dismiss the Complaint in its entirety.

17 **III. LEGAL STANDARD**

18 A motion to dismiss under Rule 12(b)(6) of the Federal Rules
19 of Civil Procedure tests the sufficiency of the complaint.
20 Dismissal pursuant to Rule 12(b)(6) is appropriate if the

---

[3] Aurora submitted a request for judicial notice in support of its motion.  Mot. Ex. 1.  The request includes public records, such as instruments recorded by San Mateo County with respect to the various parties' interest in the house.  These items are public records and properly subject to judicial notice.  See Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co., 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005).  The request also includes a chart posted on the website of the Federal National Mortgage Association, tracking the conforming limit for mortgage loans over several years.  See RJN Ex. 4 ("FNMA Loan Limits Chart").  The information contained therein is neither disputed nor reasonably questioned, and the Court takes judicial notice of it.  See O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1224-25 (10th Cir. 2007).

United States District Court
For the Northern District of California

1  plaintiff is unable to articulate "enough facts to state a claim
2  to relief that is plausible on its face," such that a right to
3  relief is raised "above the speculative level." <u>Bell Atl. Corp.</u>
4  <u>v. Twombly</u>, 550 U.S. 544, 555, 570 (2007).  When evaluating a
5  motion to dismiss, the court accepts the facts as stated by the
6  nonmoving party and draws all reasonable inferences in its favor.
7  <u>See</u> <u>Everest & Jennings, Inc. v. Am. Motorists Ins. Co.</u>, 23 F.3d
8  226, 228 (9th Cir. 1994).  Furthermore, the court must assume that
9  all general allegations "embrace whatever specific facts might be
10 necessary to support them."  <u>Peloza v. Capistrano Unified Sch.</u>
11 <u>Dist.</u>, 37 F.3d 517, 521 (9th Cir. 1994).  At the pleading stage,
12 the plaintiff "need only show that the facts alleged, if proved,
13 would confer standing upon him."  <u>Warren v. Fox Family Worldwide,</u>
14 <u>Inc.</u>, 328 F.3d 1136, 1140 (9th Cir. 2003).

15      When considering a motion to dismiss, the court is generally
16 limited to the allegations in the complaint, without extrinsic
17 evidence.  <u>See</u>, e.g., <u>Hal Roach Studios, Inc. v. Richard Feiner &</u>
18 <u>Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).  However, a court
19 may consider extrinsic documents when "the plaintiff's claim
20 depends on the contents of a document, the defendant attaches the
21 document to its motion to dismiss, and the parties do not dispute
22 the authenticity of the document, even though the plaintiff does
23 not explicitly allege the contents of that document in the
24 complaint."  <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005).
25 ///
26 ///
27 ///
28

4

**IV. DISCUSSION**

  **A. Proper Removal of this Action**

  As a preliminary matter, the Court notes that this action was properly removed to federal court.  Plaintiff questions whether removal to this Court was proper, Opp'n at 3, however Plaintiff does not provide any legal argument as to why removal may have been improper.  Removal is proper if the district court has original jurisdiction, and original jurisdiction exists for all actions arising out of the laws of the United States.  28 U.S.C. §§ 1331, 1441.  As discussed in more detail below, the causes of action in the Complaint rest in part upon the defendants' alleged violation of federal law, including the Home Ownership and Equity Protection Act (15 U.S.C. §§ 1639, et seq.) ("HOEPA"), the Truth in Lending Act (15 U.S.C. §§ 1601, et seq.) ("TILA"), Regulation Z (12 C.F.R. § 226.23), and the Federal Trade Commission Act (15 U.S.C. §§ 41-58) ("FTCA").  Compl. ¶ 19.  This Complaint raises federal questions sufficient to warrant removal.

  **B. Declaratory Relief**

  As his first cause of action, Plaintiff seeks declaratory relief against all defendants.  Compl. ¶¶ 9-20.  Declaratory relief is ultimately a request for relief, rather than a cause of action, and in order to weigh it the Court must look to the underlying claims.  See, e.g., Weiner v. Klais and Co., Inc., 108 F.3d 86, 92 (6th Cir. 1997)("With regard to Count IV, in which plaintiff seeks declaratory relief, plaintiff has merely asserted a form of relief, not a cause of action. Plaintiff is not entitled to this relief in the absence of a viable claim.").  In laying out

5

this cause of action, Plaintiff lists a number of alleged improprieties in the lending and foreclosure process. This "cause of action" for declaratory relief therefore actually contains reference to six distinct causes of action. It alleges that the defendants (1) violated section 1632 of the California Civil Code, which requires translations of contract instruments in certain circumstances; (2) failed to disclose key information regarding the loan in violation of state law; (3) violated HOEPA; (4) violated TILA and Regulation Z; (5) violated the FTCA; and (6) potentially committed fraud in the creation of the contract with Plaintiff. Compl. ¶¶ 12-19. The Court will address each of these causes of action in turn.

### 1.  California Civil Code Section 1632

Plaintiff states that he is a Spanish speaker, is not conversationally fluent in English, and "cannot readily read or understand the English language." Compl. ¶ 12. Plaintiff states that the loan was negotiated in Spanish, and that the defendants were obligated to provide all loan documentation in Spanish under California Civil Code section 1632 ("Section 1632"). Id. ¶¶ 13-14. However, the Deed of Trust and Promissory Note were only provided in English, and Plaintiff claims that this made the transaction improper. Id. ¶ 14.

Section 1632(b) requires "[a]ny person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean" to deliver a translation of certain contracts in the language in which that contract was negotiated. Aurora contends that "negotiates primarily in Spanish" refers to

1   the negotiator's business as a whole -- i.e., that the statute
2   applies only to those businesses that use Spanish in most of their
3   transactions, rather than to businesses that engage in a single
4   negotiation that is "primarily in Spanish."  Mot. at 5.  This
5   reading is too narrow, as the section explicitly applies to anyone
6   "who negotiates primarily in Spanish . . . in the course of
7   entering into any" of a number of specified types of contract.
8   Cal. Civ. Code § 1632(b).  This phrase clearly applies to anyone
9   who negotiates a particular contract in Spanish -- not just those
10  entities that negotiate most of their contracts in Spanish.

11       Aurora points out that Section 1632(b) "only applies to loans
12  negotiated by real estate brokers or licensees."  Mot. at 6.  This
13  is because loans or extensions of credit secured by real property
14  are generally excluded by Section 1632(b)(2).  However Section
15  1632(b)(4) includes any "loan or extension of credit for use
16  primarily for personal, family or household purposes where the
17  loan or extension of credit is subject to the provisions of"
18  section 10240 of the California Business and Professions code,
19  which includes loans secured by real property that are negotiated
20  by real estate brokers.  See, e.g., Marcelos v. Dominguez, No. 08-
21  0056, 2008 U.S. Dist. LEXIS 91916, at *22 (N.D. Cal. Apr. 21,
22  2008); Munoz v. Int'l Home Capital Corp., No. 03-1099, 2004 U.S.
23  Dist. LEXIS 26362, at *26-28 (N.D. Cal. May 4, 2004).  Put simply,
24  real property transactions are excluded by Section 1632(b)(2), but
25  brought back into the statute by Section 1632(b)(4), so long as
26  they are negotiated by a broker.  Nevertheless, several courts
27  have rejected the proposition that defendants are immune from this
28

7

statute simply because they are not themselves brokers, so long as the defendant has an agency relationship with a broker or was acting as a broker. See, e.g., Dominquez, 2008 U.S. Dist. LEXIS 91916 at *24 (broker served as agent for defendant); Munoz, 2004 U.S. Dist. LEXIS 26362 at *28 (same); Gonzalez v. Ameriquest Mortgage Co., No. 03-0405, 2004 U.S. Dist. LEXIS 22705, at *25-26 (N.D. Cal. Mar. 1, 2004) (plaintiff alleged defendant mortgage lenders were "acting as real estate brokers").

Plaintiff has not suggested that any instrument or agreement was negotiated by a real estate broker, that any party was acting as a broker, or that an agency relationship existed between any defendant and a broker. In fact, Plaintiff does not offer any details regarding the negotiation process. Plaintiff does not even state which, if any, defendant participated in negotiations with him. For this reason, Plaintiff fails to state a claim under Section 1632. Plaintiff will be afforded the opportunity to amend his Complaint to allege facts necessary to bring this action within the ambit of Section 1632(b).

Aurora further contends that Section 1632(b) does not apply to organizations that are governed by the Office of Thrift Supervision ("OTS"), like Aurora. Mot. at 5. This matter has not been fully briefed, however based on the language of the statute, the Court disagrees with Aurora. Section 1632(b) applies to "any person engaged in a trade or business." Aurora cites a separate subsection, 1632(e), to support its contention. Mot. at 5. Subsection 1632(e) applies more narrowly to "supervised financial organizations," which excludes associations like Aurora, and

8

1  simply provides that certain translations provided by "supervised
2  financial organizations . . . shall also be deemed in compliance
3  with the requirements of subdivision (b) . . . ."  Aurora contends
4  that because it falls outside of subsection 1632(e), then Section
5  1632(b), or Section 1632 as a whole, should not apply to it.
6  However, Section 1632(b) is not limited to "supervised financial
7  organization," and the Court is not persuaded by Aurora's reading
8  of the statute.

9  Finally, Aurora argues that Section 1632 is preempted by 12
10 C.F.R. § 502.2, which the OTS enacted to create a uniform set of
11 regulations governing federal saving associations.  Mot. at 5-7.
12 The Court has already determined that Plaintiff's Section 1632
13 argument is improperly plead.  In particular, because Plaintiff
14 does not allege which party or entity he negotiated with, it is
15 not clear whom Plaintiff intends Section 1632 to apply to.  Given
16 the "fundamental and long-standing principle of judicial restraint
17 [that] requires that courts avoid reaching constitutional
18 questions in advance of the necessity of deciding them," Lyng v.
19 Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 445
20 (1988), the Court does not reach this question at this time.

21          2.   State Disclosure Requirements

22 Plaintiff alleges that the defendants -- and specifically,
23 Aurora, its predecessor and agents -- failed to disclose to him
24 the exact interest rate, loan repayment terms, the costs and fees
25 of the loan, the content of the yield spread premium provision, or
26 the risk of negative amortization.  Compl. ¶¶ 14-18.  Plaintiff
27 claims that these disclosures are required by Sections 4970 and

1  4973 of the California Financial Code ("Section 4970").  However,
2  Section 4970 explicitly limits its application to "covered loans."
3  A "covered loan" is "a consumer loan in which the original
4  principal balance of the loan does not exceed the most current
5  conforming loan limit for a single-family first mortgage loan
6  established by the Federal National Mortgage Association ["Fannie
7  Mae"] in the case of a mortgage or deed of trust."  Cal. Fin. Code
8  § 4970(b).  Plaintiff received a loan for $624,000.  Compl. ¶¶ 11-
9  12.  At the time he received this loan, the conforming loan limit
10 set by Fannie Mae was $417,000.  See FNMA Loan Limits Chart.
11 Consequently, Section 4970 does not apply to this loan.  See,
12 e.g., Sutherland v. Diversified Capital, Inc., No. 08-3474, 2008
13 U.S. Dist. LEXIS 61016, at *4-6 (N.D. Cal. July 24, 2008) (holding
14 that Section 4970 does not apply to non-conforming jumbo loan).[4]

### 3.  The Home Ownership and Equity Protection Act, the Truth in Lending Act and Regulation Z

17 Plaintiff further contends that the defendants' omissions
18 violate HOEPA, TILA, and Regulation Z (which is an implementing
19 regulation under TILA).  Compl. ¶ 19.  TILA and HOEPA share a one-
20 year statute of limitations, which starts from "the date of the
21 occurrence of the violation."  15 U.S.C. § 1640(e).  The alleged
22 omissions occurred when the agreement was entered into, on October
23 6, 2006, and this suit was not filed until over two years after
24 these violations, on January 23, 2009.  See Compl. ¶¶ 10-11.
25 Plaintiff has made no attempt to argue that this statute of

---

[4] The Court need not reach Aurora's preemption arguments with respect to Section 4970.  Mot. at 5-7.

10

limitations can or should be tolled, and does not address TILA or HOEPA at all in his Opposition. Plaintiff's claim, as plead, is therefore barred by the statute of limitations.

### 4. The Federal Trade Commission Act

Plaintiff also claims that the defendants violated the FTCA. Compl. ¶ 19. This Act does not provide a private right of action. See Carlson v. Coca-Cola Company, 483 F.2d 279, 280 (9th Cir. 1973) ("The protection against unfair trade practices afforded by the Act vests initial remedial power solely in the Federal Trade Commission."). Plaintiff has not explained how the complaint states a cause of action under the FTCA.

### 5. The Potential for a Fraud Claim

At several points in his Opposition, Plaintiff attempts to characterize this cause of action as a type of contract claim, insisting that the alleged failures to disclose negates the mutual assent between the parties. Opp'n at 5. When construed in a light most favorable to Plaintiff, these alleged failures to disclose could potentially be read as allegations that a defendant fraudulently omitted key facts during the contract's formation. Even so, in its current form, the Complaint falls short of specifically alleging fraud or mistake, as per the requirements in Rule 9(b) of the Federal Rules of Civil Procedure. For example, it does not provide any indication of who negotiated the loan, who made or failed to make what kinds of representations, whether the omissions were intended, etc. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (plaintiff must include "the who, what, when, where, and how" of the fraud).

Plaintiff's first cause of action for declaratory relief is DISMISSED WITHOUT PREJUDICE. If Plaintiff chooses to replead this cause of action, he is strongly encouraged to clearly identify and separate the distinct causes of action that provide the basis of his request for relief.

### C. Set Aside Notice of Trustee's Sale and Notice of Default

As with Plaintiff's first cause of action, Plaintiff's second cause of action to "set aside Notice of Trustee's Sale and Notice of Default" is actually a request for relief based on several underlying causes of action. In particular, Plaintiff alleges that (1) Aurora and Quality failed to serve a copy of the Notice of Default and Notice of Trustee's Sale upon the Plaintiff, pursuant to California Civil Code section 2924 ("Section 2924"); (2) the instruments are invalid because of the allegations contained in the first cause of action (which the Court has already dismissed), and (3) foreclosure was inappropriate because neither Aurora nor Quality possess the original promissory note. Compl. ¶¶ 21-31.

#### 1. Failure to Serve Plaintiff with Notices

Plaintiff claims that Aurora and Quality failed to serve him with the Notice of Trustee's Sale and Notice of Default, as required under Section 2924. Compl. ¶¶ 23-26. Defendant does not challenge the adequacy of this allegation. Rather, Defendant argues that Plaintiff "has no standing to challenge the foreclosure process" because Plaintiff has not tendered his indebtedness. Mot. at 10. "It is settled that an action to set aside a trustee's sale for irregularities in sale notice or

12

1  procedure should be accompanied by an offer to pay the full amount
2  of the debt for which the property was security."  Arnolds Mgmt.
3  Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (Ct. App. 1984); see
4  also 4 Witkin, Summary of Cal. Law (10th ed. 2005), Security
5  Transactions in Real Property, § 152 ("Where proper notice is not
6  given, the sale is ordinarily only voidable, not void, and the
7  mortgagor cannot sue to set it aside or quiet title without
8  offering to do equity by paying the debt.").  This is because
9  "[e]quity will not interpose its remedial power in the
10 accomplishment of what seemingly would be nothing but an idly and
11 expensively futile act, nor will it purposely speculate in a field
12 where there has been no proof as to what beneficial purpose may be
13 subserved through its intervention."  Leonard v. Bank of Am. Nat'l
14 Trust & Savings Ass'n, 16 Cal. App. 2d 341, 344-46 (Ct. App.
15 1936).  Where a plaintiff fails to allege an ability or
16 willingness to tender, a request to set aside a foreclosure sale
17 on the basis for improper notice may be dismissed.  See, e.g.,
18 Rodriguez v. Litton Loan Servicing LP, No. 09-0029, 2009 U.S.
19 Dist. LEXIS 43143, at *16-18 (E.D. Cal. May 11, 2009).  Here,
20 Plaintiff has not offered to tender his indebtedness, either
21 immediately or at any time in the future.  For this reason, it
22 would be futile for the Court to set aside any of the instruments
23 based on the alleged notice-related failures.

24             2.    The Trustee Has the Power to Foreclose
25     Plaintiff's second colorable basis for this cause of action
26 is that none of the defendants are proper note holders.  Compl. ¶¶
27 29-31.  Under California law, a trustee need not possess a note in
28
                                    13

order to initiate foreclosure under a deed of trust. <u>See</u> Cal. Civ. Code § 2924(a); <u>Putkkuri v. Recontrust Co.</u>, No. 08-1919, 2009 U.S. Dist. LEXIS 32, *5-6 (S.D. Cal. Jan 5, 2009); <u>Neal v. Juarez</u>, No. 06-0055, 2007 U.S. Dist. LEXIS 98068, *25 (S.D. Cal. July 23, 2007) ("[T]he allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding invalid."). The trustee (or, as here, the substituted trustee, Quality) has the power and the duty "to initiate foreclosure proceedings on the property upon the trustor's default, resulting in a sale of the property." <u>Kachlon v. Markowitz</u>, 168 Cal. App. 4th 316, 334 (Ct. App. 2008). Plaintiff does not address this point in his Opposition.

The Court concludes that Plaintiff's second cause of action does not state a claim upon which relief may be granted. For this reason, the second cause of action is DISMISSED WITHOUT PREJUDICE.

### D. **Cancellation of Instruments**

Plaintiff's third cause of action, for "cancellation of instruments" incorporates all of his prior allegations, and on this basis requests that the Court find the foreclosure sale to be void and unenforceable. Compl. ¶¶ 32-33. The Court has dismissed all prior causes of action, and this cause of action is DISMISSED WITHOUT PREJUDICE for the reasons discussed above.

### E. **Quiet Title**

As Plaintiff's fourth cause of action, he seeks to quiet title against all defendants. Compl. ¶¶ 87-89. The purpose of such an action is to establish one's title against adverse claims to real or personal property or any interest therein. <u>See</u> Cal.

14

1 Civ. Proc. Code § 760.020(a). Such pleadings must meet certain
2 requirements that are set out in California Code of Civil
3 Procedure section 761.020. For instance, Plaintiff is required to
4 submit a verified complaint. Id. Plaintiff has not submitted a
5 verified complaint or met the specific pleading requirements for a
6 quiet title action. Contrary to the assertions of Plaintiff's
7 counsel, signatures by party attorneys alone do not make a
8 complaint "verified" under California law. See Cal. Civ. Proc.
9 Code § 446.

### F. Accounting

As Plaintiff's fifth cause of action, he demands "a detailed accounting calculation and summary of the payoff balance [Aurora and Quality] are demanding," citing California Civil Code section 2943 ("Section 2943"). Compl. ¶¶ 38-39. Defendant claims that this is mooted by the fact that foreclosure has already occurred. Mot. at 13. The Court concurs with Defendant, and sees no reason to order an accounting after a presumptively valid foreclosure sale. Section 2943 states the specific time limits within which such items can be requested, and Plaintiff does not allege when his request was made. See Cal. Civ. Code § 2943(b). This cause of action is therefore DISMISSED WITHOUT PREJUDICE.

### G. Injunctive Relief and Damages

Plaintiff's sixth cause of action for injunctive relief is asserted against Aurora and Quality. Compl. ¶¶ 40-43. This fails as a cause of action. "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." Shell Oil Co. v. Richter, 52

Cal. App. 2d 164, 168 (Ct. App. 1942); see also McDowell v. Watson, 59 Cal. App. 4th 1155, 1159 (Ct. App. 1997) (quoting Shell Oil). Here, the Court cannot discern clear allegations that could be read to state a new and distinct claim. The same is true with respect to Plaintiff's seventh cause of action, entitled "damages." Compl. ¶¶ 44-45. Plaintiff's sixth and seventh causes of action are DISMISSED WITHOUT PREJUDICE.

### H. Lis Pendens

Aurora has requested that Plaintiff's lis pendens be expunged. Mot. at 14-15. Because the Court is granting Plaintiff the opportunity to amend his complaint, the Court DENIES Aurora's request to expunge the lis pendens.

### V. CONCLUSION

For the reasons stated above, the Complaint is DISMISSED WITHOUT PREJUDICE. If Plaintiff chooses to amend his Complaint or any cause of action, he must submit a First Amended Complaint within the next thirty (30) days. The Court DENIES Aurora's request to expunge the lis pendens.

IT IS SO ORDERED.

June 15, 2009

_____
UNITED STATES DISTRICT JUDGE

16